The will of Oliver J. Hayes, who died in 1861, is again before the court. An earlier suit for the construction of certain provisions of the will was Hayes' Executors v. Hayes, 21 *Page 549 N.J. Eq. 265. A partial final decree in the present suit was made on the opinion affirmed in Van Nest v. Van Nest, 126 N.J. Eq. 234.
Mr. Hayes, by the third paragraph of his will, devised a large tract of land at Springfield, Union county, in trust for his wife and his daughter Sarah for their lives, and then for Sarah's children, until the youngest should arrive at the age of twenty-one years, when the trustees were directed to convey the lands to the children. The trustees were also given a house and lot on Park Place, Newark, for testator's wife and his daughter Elizabeth and her children. Sarah, who never married, outlived her sister and died in 1938. In the earlier phase of the present case, Elizabeth's executors and children claimed a remainder in the Springfield property, in which Sarah had a life interest, but the decree held to the contrary, that testator died intestate as to the reversion after Sarah's equitable life estate and that the same vested on testator's death in his heirs, namely, his two daughters.
Mr. Hayes, by the fourth paragraph of his will, gave to the trustees $40,000 to invest and pay the net income to his widow for life —
"and thereafter to my said children; and in case of their death then to their lineal descendants; and eventually the principal of said fund; and all in the same manner as directed more fully in the last paragraph in respect to my real estate; but I nevertheless expressly direct that on the death of my wife, and when my children are to take their portions of said real estate, or of the income thereof, that if the said trustees deem one of said pieces of property more valuable than the other, they shall equalize the same to said children (as nearly as they can in their own judgment do it) out of the said sum of Forty thousand dollars, so that their respective shares of said real and personal estate together shall be about equal."
Fidelity Union Trust Company, sole substituted trustee under the will, has in hand the proceeds of the Springfield property, as well as Sarah's share of the $40,000 fund. The question for present determination is the distribution of these moneys.
Subsequent paragraphs of the will gave to the trustees $17,000 for sundry beneficiaries and gave $13,000 more to eleven missionary societies and charities, and five individuals. *Page 550 
Then follows paragraph ten which is particularly important in the present litigation:
"The foregoing bequest of personal property amounts in the whole to Seventy Thousand Dollars, and my will is that if the net proceeds of my personal and real estate (except however the lands devised as before to my said wife) amount to more or to less than that sum, the bequests shall each be increased or diminished as the case may be and in proportion to such bequests, and thus made to absorb my residuary personal and real estate whatever the same may be; but with this reservation nevertheless, that in case of the death of my said wife, and also of my children before reaching the age of twenty one years and without lineal descendants whatever part of my real and personal estate shall hereafter come to me from the estate of my wife's deceased father, I give and devise to the said Beach Vanderpool and his heirs forever: And in any event the whole of that part of my real and personal estate which may thus come to me shall go exclusively to my said wife and her heirs hereby intending principal and not income.
"I order and direct my said Executors Beach Vanderpool, Joseph N. Tuttle and William Vanderpool and the survivors and survivor of them to sell at such time as they deem best and to convey and give proper deeds for all the real estate I may happen to own at the time of my decease and not hereinbefore set apart for my said wife and children."
There is a codicil, but it throws no light on the issues.
When the partial final decree which I have mentioned was made, the only parties to the suit were the Fidelity Union Trust Company, substituted trustee, and the heirs and representatives of testator's daughters, Sarah and Elizabeth. By amendment of the bill thereafter, nine institutional legatees were added as defendants "both individually and as the representatives of all the legatees named in said will." The new defendants were brought in so that the court might determine whether the legatees had any interest in the particular fund; but not all the legatees were joined by name because of the great difficulty of finding them at this late day. The will was made over eighty years ago.
It was decided by the partial final decree that Elizabeth or her children had no remainder in the Springfield property. They were then fully represented in court and do not now attempt to reopen this question. The same reasons which led to the decision on the Springfield land show that Elizabeth *Page 551 
and her children were not given by the fourth paragraph of the will any interest in that part of the $40,000 fund which was set aside for her sister Sarah.
The partial final decree also adjudged that Mr. Hayes died intestate as to the reversion of the Springfield property, now represented by money in the hands of the trustee; but that decision does not conclude the new defendants, for they were not parties to the suit when it was made. Read v. Patterson,44 N.J. Eq. 211; In re Ungaro, 88 N.J. Eq. 25; Hinners v.Banville, 114 N.J. Eq. 348. Yet the decree would stand as an authoritative declaration of our law, to be followed in this case as in others, if the question of intestacy had been fully presented and argued. But it was not. So the question is still open for consideration whether the testator died intestate as to the final disposition of the funds — namely, the proceeds of the Springfield tract and Sarah's share of the $40,000 — or whether they pass under the tenth paragraph. The new defendants argue that the tenth paragraph contains a general residuary gift and that upon the failure of the contingent devise and bequest to the children of Sarah, the funds fell into the residue.
The tenth paragraph directs "that if the net proceeds of my personal and real estate (except, however, the lands devised as before to my said wife) amount to more or less than" $70,000, "the bequests shall each be increased or diminished as the case may be and in proportion to such bequests and thus made to absorb my residuary personal and real estate whatever the same may be." By proceeds of the real estate, the testator meant the money received for the real estate which he authorized and directed his executors to sell, namely, "all the real estate I may happen to own at the time of my decease and not hereinbefore set apart for my said wife and children." The executors were given no power by the will to sell the Springfield property so that there might be "proceeds" thereof which would increase the pecuniary bequests. Again, the phrase in paragraph 10, "except however the lands devised as before to my wife" evidently means the property itself and not the estates therein created by the will. For testator could not have intended to except only the life estate *Page 552 
devised to his wife, since he had also devised estates in the same land to his children and grandchildren.
The whole paragraph and, indeed the whole will, indicates that testator contemplated that at or shortly after his death, his property, real and personal, except the lands at Springfield and on Park Place, should be converted into money, his debts and expenses of administration paid, and that there would be a balance which might be more or less than $70,000, a definite sum then ascertained by which to measure his bequests. He did not intend that eighty years later, the calculation should be revised. Testator's directions were carried out many years ago; the net proceeds of the personal and real property were marshalled, and the legacies paid. Obviously, the "net proceeds" were not increased one penny by the death of Sarah without issue.
The concluding words of the crucial passage in the will are strong: "The bequests shall each be increased or diminished as the case may be, and thus made to absorb my residuary personal and real estate whatsoever the same may be." But certainly he did not mean that the bequests totaling $70,000 should be increased so as to absorb the lands at Springfield and Newark; the exception of those lands limits the whole paragraph.
When a testator does not specially dispose of all his interest in a parcel of land or in a fund, or disposes of it only upon a contingency which does not happen, then the remainder vests in the general residuary devisee or legatee. Den ex dem. Probasco
v. Creveling, 25 N.J. Law 449; Caldwell National Bank v.Rickard, 103 N.J. Eq. 516; Bankers Trust Co. v. Greims,115 N.J. Eq. 102, 113; 117 N.J. Eq. 397; First National Bank v.Pels, 116 N.J. Eq. 170. But this rule does not govern when testator confines his residuary gift to other property, or excepts from it the particular land or fund.
Exceptions from the residue were considered by our highest court in Tindall's Executors v. Tindall, 24 N.J. Eq. 512, and the rule stated, "that where the words used show an intention on the part of the testator to except from the operation of the residuary clause certain portions of the estate, such intention as gathered from the whole will must not be *Page 553 
defeated." Thus in Detwiller v. Hartman, 37 N.J. Eq. 347, a testator provided that if any part of his estate remained undisposed of after the payment of legacies and the creation of certain trust funds, the surplus should be distributed pro rata
among the legacies and funds. Chancellor Runyon held that testator died intestate as to a surplus arising from the invalidity of the trusts. In Walton v. Walton, 73 N.J. Eq. 57,
there was a gift of a fund to testator's daughter for life, remainder to her children or as appointed by her will, and there was a general residuary gift to testator's wife. Upon failure of the remainder, Vice-Chancellor Pitney held that intestacy resulted. He reached the result from a variety of considerations, which need not be here summarized. These two decisions seem to me somewhat questionable.
Roy v. Monroe, 47 N.J. Eq. 356, is on firmer ground. Testator directed his executors "to take from my estate the sum of $10,000 and the residue of my estate pay over or convey to my son;" and then made an ineffectual gift of the $10,000. Vice-Chancellor Van Fleet said, "that the means which the testator has directed to be used to fix the quantum or extent of the residue necessarily excludes the $10,000," and so that sum did not become a part of the residue. Other illustrations are Inre Alabone's Estate, 75 N.J. Eq. 527, where there was a residuary legacy of "personal estate" and Kempson v. Hoskins,88 N.J. Eq. 153; 89 N.J. Eq. 205, where after a general residuary gift, testator added, "From all the provisions of the preceding clauses I except my interest in The Insurance Times."
Following these cases, I find that the Springfield property, as well as the homestead on Park Place, was excepted from the operation of the tenth paragraph of the will.
Thus far I have been proceeding as if that clause contained a residuary bequest within the meaning of the rules above discussed; but I am satisfied that it does not. It purports to give nothing. It merely provides how the exact amount of testator's earlier bequests shall be ascertained. "The bequests shall each be increased or diminished as the case may be and in the proportion to such bequests." Any residuary disposition must be found not in paragraph ten alone *Page 554 
but in paragraphs four to ten, inclusive, and the will construed as if Mr. Hayes instead of giving $40,000 to trustees for the purposes expressed in the fourth paragraph, had given them four-sevenths of the net proceeds of his estate, except the lands mentioned and except what he might receive from his father-in-law's estate. The failure of the final gift of part of the $40,000, or four-sevenths share, does not result in an enlargement of the other three-sevenths, but rather in partial intestacy. Rippel v. King, 126 N.J. Eq. 297. This is in no way contrary to Allen v. Moore, 86 N.J. Eq. 357; 87 N.J. Eq. 365,
for there, after pecuniary legacies, the residue was given to the executors with directions to divide among the legatees, while in the Hayes will, as I have pointed out, there is no separate gift of residue, but only a direction that the legacies shall be each increased so as to absorb the residue.
I will advise a decree that Mr. Hayes died intestate as to the final disposition of the fund now in the trustee's hands and that, upon his death, title vested in his two daughters as heirs and next of kin, and that the fund should be distributed accordingly.